**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM AND LISA VALESKY, on behalf of their minor child, D.V., | : | ELECTRONICALLY FILED |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. 09-00800 |
| v. | : | |
| | : | |
| THE ROMAN ARCHDIOCESE OF GREENSBURG, and AQUINAS ACADEMY, INC., and NOURREDINE DESLAM, an individual | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants, the Roman Archdiocese of Greensburg[1] ("Diocese"), Aquinas Academy, Inc. ("Aquinas"), and Nourredine Deslam ("Deslam"), through their counsel, the LEVIN LEGAL GROUP, P.C., pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submit this Memorandum of Law in support of their Motion to Dismiss portions of the First Amended Complaint filed by Plaintiffs William and Lisa Valesky ("Plaintiffs") on behalf of their minor child, D.V.

## INTRODUCTION

Pending for disposition by the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. The Motion to Dismiss was filed pursuant to Federal Rule of Civil

---

[1] For reasons unknown to the Defendants, in the caption of the Complaint, the Plaintiffs list "The Roman Archdiocese of Greensburg" as a defendant; however, in the body of the Complaint, the Plaintiffs identify the Defendant as the "Diocese of Greensburg." (Amended Complaint ¶ 7). The proper party is the Diocese of Greensburg. There is no such entity as the Roman Archdiocese of Greensburg. The Plaintiffs should take steps to correct the caption with the Court.

Procedure 12(b)(6) on the basis that Plaintiffs fail to state a claim upon which relief can be granted.

Plaintiffs filed a Complaint with the Court on June 12, 2009, and Defendants responded by filing a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on August 25, 2009.   Plaintiffs filed an Amended Complaint on September 16, 2009.   Defendants are now filing this second Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in response to Plaintiffs' Amended Complaint.

In their Amended Complaint, Plaintiffs assert the following claims against the following Defendants: (1) a claim for negligence per se against Deslam (Count I); (2) a claim for negligence per se against the Diocese (Count II); (3) a claim for negligent failure to supervise children against the Diocese (Count III); (4) a claim under Title IX of the Education Amendments of 1972 ("Title IX") against the Diocese (Count IV); (5) a claim for intentional infliction of emotional distress ("IIED") against Deslam (Count V); (6) a claim for negligent infliction of emotional distress ("NIED") against the Diocese and Deslam (Count VI); and (7) a claim entitled "premises liability" against the Diocese (Count VII).   Defendants seek dismissal of all of the claims in the Amended Complaint, except the IIED claim against Deslam.

## FACTUAL BACKGROUND

The following facts are pled in the First Amended Complaint.   During the 2007-2008 and 2008-2009 school years, Plaintiffs' minor child attended Aquinas Academy for preschool and then kindergarten.   (Am. Compl. ¶¶ 9-10).   During these school years, Deslam was employed as a maintenance worker at Aquinas Academy.   (Am. Compl. ¶ 10).   Plaintiffs allege that Deslam sexually abused D.V. on Diocesan property, beginning in October 2008, while D.V. was in kindergarten.   (Am. Compl. ¶¶ 12-14).   Plaintiffs contend that Deslam's sexual abuse included

"sexual assault, aggravated indecent assault of a child, indecent assault, indecent exposure, false imprisonment and corruption of a minor."  (Am. Compl. ¶ 13).

Plaintiff does not allege any facts to support knowledge of Deslam's alleged actions by any appropriate official at Aquinas Academy and/or the Diocese.  Although Plaintiffs aver that the Diocese either knew or had constructive knowledge of Deslam's sexual misconduct with young children (Am. Compl. ¶ 16), Plaintiffs have not alleged any factual support for such a legal conclusion.

## LEGAL STANDARD

Pursuant to Fed.R.Civ.P. 2(b)(6), a defendant may file a motion to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted.   In reviewing a motion to dismiss under Rule 12(b)(6), the court "accepts well-pleaded allegations and reasonable inferences as true, and construes the complaint in the light most favorable to the non-moving party."  *Thompson v. Horsham Township*, 576 F.Supp.2d 681, 687 (E.D. Pa. 2008).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted), the Court ruled that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…."  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level…."  *Id.* (citations omitted).  Moreover, the court is not required to credit bald assertions or legal conclusions in a complaint. *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F.Supp.2d 634 (E.D. Pa. 2008). The court must dismiss the complaint if the plaintiff "does not plead all of the essential elements of his or her legal claim…."  *Edgar v. Avaya, Inc.*, 503 F.3d 340, 349 (3d Cir. 2007).

**ARGUMENT**

I.   **DEFENDANT AQUINAS ACADEMY MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLED ANY FACTS PERTAINING TO AQUINAS ACADEMY AND, THEREFORE, HAVE NOT RAISED ANY CLAIMS AGAINST THIS DEFENDANT.**

In the caption of Plaintiffs' Amended Complaint, Aquinas Academy is identified as a Defendant in this matter.  However, Aquinas Academy is not identified as a Defendant in the body of the Amended Complaint, and there are absolutely no allegations or claims directed against it.  The counts in the Amended Complaint raise claims against either the Diocese or Deslam, but none mention Aquinas Academy.  Since none of the claims are directed against Aquinas Academy, Plaintiffs have failed to state any claims upon which relief can be granted with respect to Aquinas Academy, and Aquinas Academy must be dismissed as a party to the case with prejudice.

II.   **PLAINTIFFS' NEGLIGENCE PER SE CLAIMS AGAINST BOTH DESLAM AND THE DIOCESE MUST BE DISMISSED.**

In Counts I and II of the Complaint, Plaintiffs set forth "negligence per se" claims against both Deslam and the Diocese.[2]  Essentially, Plaintiffs assert that alleged violations of the Pennsylvania criminal code may be the basis of a negligence per se action against Deslam and that alleged violations of the Child Protective Services Law ("CPSL") may be the basis of a negligence per se action against the Diocese.  Neither is actionable.  Deslam has not been charged with any crimes.  Notwithstanding that fact, alleged violations of the criminal code

---

[2] Although the facts in the Amended Complaint must be accepted as true for purposes of this Motion to Dismiss, the Defendants vehemently deny that Deslam ever sexually abused D.V. as accused in the Amended Complaint, that he ever acted inappropriately with the Plaintiffs' daughter and that he engaged in any of the conduct alleged in the Amended Complaint.

cannot form the basis of an actionable civil tort.  With respect to the negligence per se claim against the Diocese, the CPSL cannot be used as a basis for a negligence per se claim, as there is no private cause of action under the CPSL.  Further, there have been no facts pled to support a violation of the CPSL by the Diocese.  Therefore, Counts I and II must be dismissed with prejudice.

> a. <u>Alleged Violations of the Pennsylvania Criminal Code Cannot Form the Basis of a Negligence Per Se Claim against Deslam.</u>

Plaintiffs cite to several sections of the Pennsylvania Criminal Code addressing the crimes of rape, aggravated assault of a child, indecent assault, indecent exposure, and corruption of minors  (Complaint ¶ 22), and then assert that these criminal statutes impose certain "duties" on Deslam that he has violated (Complaint ¶ 23).  However, these criminal laws do not, in and of themselves, create the basis for civil liability.  The fact that the General Assembly criminalizes certain conduct does not necessarily mean that a person has a private right of action for an injury that results from a violation of the criminal statute.

The Pennsylvania Supreme Court set forth the standards for determining whether a private cause of action exists by implication in statute, even where none is expressly stated, in *Estate of Wittheoft v. Kiskaddon*, 733 A.2d 623 (Pa. 1999).  In *Estate of Wittheoft*, the estate of a person killed in a car accident, where the other driver's eyesight vision was below acceptable standards, sued the ophthalmologist who had examined the driver's eyesight four months prior to the car accident, but failed to report the driver's eyesight deficiency to PennDOT, as required by Section 1518(b) of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S.A. § 1518(b).  The Court noted that "neither the [MVFRL] nor the regulations expressly authorize a private cause of action for failure to report a vision problem."  *Estate of Wittheoft*, 733 A.2d. at

626. "Simply stated, the terms of the statute do not expressly create a private cause of action." *Id.*

Borrowing from the United State Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975), the Court in *Estate of Wittheoft* cited three factors for determining whether a statute grants a private cause of action by implication:

> [F]irst, is the plaintiff 'one of the class for whose especial benefit the statue was enacted,' – that is, does the statute create a… right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff?

*Estate of Witthoeft*, 733 A.2d. at 626 (quoting *Cort v. Ash*, 422 U.S. at 78). The Court noted: "the second *Cort* factor has been recognized as the 'central inquiry' of the analysis." *Id.* In reviewing the statute to determine whether there was an indication of a legislative intent to confer a private cause of action under Section 1518(b) of the MVFRL, the Court observed: "[n]owhere does the language found in the statute suggest that private parties may bring an action seeking damages for a failure to comply with the notification provisions." *Estate of Witthoeft*, 733 A.2d at 626. The Court concluded, "[s]imply stated, this court will not find a private cause of action based on the reporting requirements under the [MVFRL] because the General Assembly has not so expressly provided and because there is no statutory basis to imply the same. *Id.* at 627.

In *D'Errico v. DeFazio,* 763 A.2d 424, 429 (Pa.Super. 2000), the plaintiffs sued the Allegheny County Sheriff, DeFazio, claiming that he authorized their private employer to use two deputy sheriffs to escort them from their offices when they were fired, and that they had a private right of action against DeFazio based on his alleged violation of the "official oppression" statute, 18 Pa.C.S. § 5301, a criminal statute. The trial court granted summary judgment in favor

of DeFazio, which the Superior Court affirmed, holding that there was no basis to conclude that the General Assembly intended to grant a private right of action under 18 Pa.C.S. § 5301, even to one injured as a result of the criminal conduct:

> It is clear that the official oppression statute, like all criminal statutes, is intended to protect the public in general from certain behavior which society finds abhorrent and to punish those who engage in that behavior: in this case, the statute is intended to protect the public from an abuse of power by public officials, and to punish those officials for such abuse. To find that the statute was enacted for appellants' especial benefit, however, because appellee allegedly abused his power by authorizing his deputies to assist in appellants' termination from employment would be to imply a private right of action in all criminal statutes and for all victims of crime. Without some indication in § 5301 that the legislature contemplated a private right of action for acts of official oppression, we are therefore reluctant to create one.

*D'Errico*, 763 A.2d at 430.

In this case, like in *D'Errico*, there is nothing in any of the criminal statutes cited that indicates they were enacted by the General Assembly to protect anyone other than the public in general. Thus, Plaintiffs cannot establish that D.V. was part of a special class of individuals to whose benefit the criminal statutes were enacted such that a private right of action under the criminal statutes would be implied.

Not only do the referenced criminal statutes not provide a basis for a private cause of action, but the Plaintiffs do not even aver that Deslam has been charged with a crime as a result of the allegations they now render against him under the referenced criminal statutes. It is disingenuous at best for the Plaintiffs to claim that Deslam's conduct violated criminal laws, and therefore should be actionable civilly, when no authority has ever charged Deslam with the commission of those crimes.

Notwithstanding these problems, the criminal statutes at issue also cannot form the basis of a negligence per se claim, as those statutes were meant to protect the public generally and not

a particular class of people such as D.V.  This is a separate analysis, although similar, than the determination of whether there is a private right of action under the Crimes Code.  In order to prove a claim based on negligence per se, the following four requirements must be met:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Wagner v. Anzon, Inc.,* 684 A.2d 570, 574 (Pa.Super. 1996) (citations and quotations omitted).

As discussed above, the purpose of the criminal statutes cited by the Plaintiffs is not to protect the interests of a particular group of individuals, but rather to protect the public generally. Accordingly, Plaintiffs cannot satisfy the first element in a negligence per se claim.  "In this case, however, appellants do not seek redress under general negligence or other well-established common law principles: instead, they seek to impose civil liability based on the criminal statute itself. As a result, we find no merit to appellants' second issue. While appellants may have a civil claim based on the same conduct the statute makes criminal, that claim does not lie pursuant to the statute." *D'Errico*, 763 A.2d at 430.

For these reasons, Plaintiffs cannot base a negligence per se claim on alleged crimes committed by Deslam for which he has never been charged.  Therefore, Count I must be dismissed with prejudice.

> b. <u>Alleged Violations of the CPSL Cannot Form the Basis of a Negligence Per Se Claim against the Diocese.</u>

Plaintiffs aver that alleged violations of the CPSL by unidentified persons at the Diocese create civil liability for the Diocese. (Complaint ¶¶ 31, 33).  Plaintiffs appear to assert that

unidentified persons had a duty to report suspected child abuse to the proper authorities and that they failed to report Deslam's abuse, thereby breaching a duty owed under the CPSL, 23 Pa.C.S. § 6311.  (Complaint ¶¶ 31-33).  However, the CPSL, found at 23 Pa.C.S. §§ 6301 *et seq*., does not create any private right of action for a failure to report suspected abuse either expressly or by implication.  Further, regardless of whether there is a private right of action, there are no facts pled to support such a claim against the Diocese.

The CPSL establishes reporting requirements for certain school employees, including school employees and administrators, who have reasonable cause to suspect that a student is the victim of serious bodily injury, sexual abuse or sexual exploitation by a school employee.  *See* 23 Pa. C.S. §§ 6352(a), 6353(a).  Under the CPSL, if a school employee or school administrator "willfully" fail to report such allegations as required under the Law, the CPSL sets forth the statutory penalty for such failures, which is a criminal penalty.  23 Pa.C.S. §§ 6352(c), 6353(d).  Nothing in Sections 6352 or 6353 or the other provisions of the CPSL authorize a private lawsuit by any individual allegedly injured as a result of the failure to make a report.

With respect to the CPSL, there is no expression of a legislative intent to provide a private right of action for failure to report suspected child abuse.  In describing the legislative purpose of the CPLS, Section 6302(b) states:

> (b) Purpose. – It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and completely, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained.  It is also the purpose of the chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the

capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa. C.S.A. § 6302(b).

Nowhere in this statement of purpose is there any indication that the General Assembly intended that individuals should have a private right of action against any person who fails to make a report required by the CPSL. Indeed, the General Assembly specifically provided only criminal penalties, not a civil penalty, for individuals who violate the reporting requirements of the CPSL. *See e.g.,* 23 Pa. C.S.A. §§ 6319, 6352(c), 6353(d). Moreover, to the extent that there are any provisions in the CPSL regarding civil liability, they are: (1) to grant immunity from civil suit for any person who makes a good-faith report of child abuse that later turns out to be false, *see* 23 Pa. C.S.A. §§ 6318(d), 6352(b), 6353(c); and (2) to grant a right to a civil action but only to any person "who, in good faith, makes or causes the report to be made and, as a result thereof, is discharged from his employment…." 23 Pa. C.S.A. § 6311(d). Had the General Assembly intended to authorize private individuals to file civil suits for an alleged failure to comply with the reporting requirements of the CPSL, it easily could have done so with an express provision, as it did in Section 6311(d) of the CPSL when it granted a private cause of action, but *only* for those who are discharged from employment for making a report of child abuse. The CPSL's express grant of immunity from civil suit for *making* an erroneous report, moreover, does not imply civil liability for *failing* to make a report. Accordingly, application of the second *Cort* factor precludes Plaintiffs from attempting to assert a private cause of action under the CPSL against the Diocese, where there is no legislative intent to create one. Since there is no private right of action for alleged violations of the reporting requirements of the CPSL, Plaintiff's negligence per se claim against the Diocese must be dismissed with prejudice.

Even if there were a private right of action under the CPSL, Plaintiffs have failed to allege any facts to support a violation of the CPSL by the Diocese.  First, there are absolutely no facts in the Complaint that indicate any school administrator received a "report of serious bodily injury of sexual abuse or sexual exploitation" alleged to have been committed by a school employee against a student.  23 Pa. C.S.A. § 6365(a). Without such factual averments, Plaintiffs' claim of negligence per se is not cognizable, even if there is a private right of action under the CPSL.

Moreover, Section 6311 of the CPSL directs certain "persons" to report suspected child abuse; it does not establish any responsibilities for the entity that employs such persons.  23 Pa.C.S. §§ 6311(a), (b).  Because the Plaintiffs' negligence per se claim in Count II is directed against the Diocese, the Diocese as an entity has no responsibilities or duties under 23 Pa.C.S. § 6311.  Thus, Section 6311 cannot form the basis of a negligence per se claim against the Diocese.

For all of these reasons, Count II must be dismissed with prejudice.

III.    **PLAINTIFFS' TITLE IX, NEGLIGENT SUPERVISION, PREMISES LIABILITY AND NIED CLAIMS AGAINST THE DIOCESE AND THE NIED CLAIM AGAINST DESLAM MUST BE DISMISSED.**

In addition to the negligence per se claim in Count II, Plaintiffs have also brought a Title IX, negligent supervision, NIED and premises liability claims against the Diocese.  However, there are no facts in the Amended Complaint to support such claims.  No actions or omissions have been attributed to any person employed or affiliated with the Diocese other than Deslam. Respondeat superior averments are insufficient to establish liability against the Diocese, as Deslam's employer, for purposes of Title IX.  Deslam was not acting as an agent of the Diocese for purposes of the common law tort claims, as he was not acting within the scope of his

employment when he engaged in the alleged acts.   Further, an NIED claim is not legally cognizable against Deslam.   Because Plaintiffs fail to state a claim upon which relief can be granted on these claims, they all must be dismissed from the Amended Complaint with prejudice.

a.   <u>Plaintiffs' Title IX Claim Must Be Dismissed With Prejudice.</u>

Title IX prohibits sex discrimination by recipients of federal financial assistance.   The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).   The United States Supreme Court has made it clear that it is not enough to allege that school officials "knew or should have known" of sexual harassment -- actual knowledge on the part of the school officials is required to establish liability under Title IX.   *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999); *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).   In *Gebser*, the Supreme Court clearly stated, "we will not hold a school district liable in damages under Title IX . . . absent actual notice and deliberate indifference." *Gebser* at 292. *Gebser* involved a sexual relationship between a high school student and one of her teachers.   The Supreme Court ruled that the constructive notice was insufficient to state a viable claim under Title IX and that school officials had to have *actual knowledge* of the sexual misconduct to be held liable.   In pertinent part, the Supreme Court stated in *Gebser* that:

> We conclude that it would "frustrate the purposes" of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice, i.e. without actual notice to a school district official.

*Gebser*, 118 S.Ct. at 1997.

The point of Title IX is not to punish the recipient of federal funding for the acts of the harasser.   Title IX, in limited circumstances, may impose liability on the recipient of federal

funding, but only for the funding recipient's own *deliberate indifference* to *known* acts of harassment.  *Davis, supra*, at 643 (emphasis added).  To avoid liability, "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."  *Davis, supra*, at 649. The recipient cannot be liable for damages under Title IX "unless its deliberate indifference 'subjects' its students to harassment.  That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it."  *Davis*, 526 U.S. at 644-645 (citations omitted).

Notice of the alleged harassment must have been provided to an appropriate school official in order for the recipient to be deemed to have "actual knowledge."  *Bostic v. Smyrna School District*, 418 F.3d 355, 360 (3d Cir.2005); *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002).  An appropriate person is an administrator in a supervisory capacity, such as a principal.  *Id.* at 171-72; *Bostic, supra*.  Other school officials may be "appropriate persons," depending on their power to take corrective action to address the discrimination and institute corrective measures. *Bostic, supra.*

Plaintiffs aver in the Amended Complaint that the Diocese had "actual knowledge and notice of the sexual abuse and harassment of D.V. by Defendant Deslam."[3]  (Amended Complaint. ¶ 47).  As noted above, actual knowledge or actual notice is a necessary element of Plaintiffs' Title IX claim.  Plaintiffs' averment in Paragraph 47 of the Amended Complaint, however, is nothing more than a legal conclusion and a "bald assertion," which need not be

---

[3] Despite the fact that there is absolutely no factual support for such a conclusion, this averment is also inconsistent with the other averments in the Amended Complaint.  For example, Plaintiffs aver that: "Defendant Diocese either knew or had constructive knowledge of Defendant Deslam's sexual misconduct with young children…." (Amended Complaint. ¶ 18). Plaintiffs also aver that: "Defendant Diocese either knew or reasonably should have known of Defendant Deslam's unlawful and abusive conduct, assault, and battery of D.V." (Amended Complaint ¶ 30).

credited by the Court. *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F.Supp.2d 634 (E.D.Pa. 2008). There is not one single fact set forth in the Amended Complaint to support actual knowledge or notice on the part of any "appropriate official" of the Diocese or Aquinas Academy regarding Deslam's alleged conduct. Plaintiffs do not even identify by name any official who might have been on notice of Deslam's alleged conduct.

Since Plaintiffs' Amended Complaint is completely bereft of factual support for their Title IX claim against the Diocese, said claim in Count IV must also be dismissed with prejudice.

b.  Plaintiffs' Negligent Supervision and NIED Claims Are Not Cognizable.

Plaintiffs have also brought a negligent supervision claim against the Diocese in Count III of the Amended Complaint and a NIED claim against the Diocese in Count VII of the Amended Complaint. These claims are not cognizable under the alleged facts, as Defendant Deslam was clearly not acting within the scope of his employment when he allegedly engaged in the averred acts.

Negligent supervision claims may be premised on respondeat superior liability but only where the employee, i.e. the alleged bad actor, was acting within the course and scope of his employment. To determine whether an employee is acting within the scope of his employment, the Pennsylvania appellate courts have endorsed the test set forth in the Restatement (Second) of Agency, § 228:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> >
> > (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master.

14

> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Costa v. Roxborough Mem'l. Hosp.*, 727 A.2d 490 (Pa.Super. 1998), *appeal den.*, 72 A.2d 1120 (Pa. 1998); *Fitzgerald v. McCutcheon*, 410 A.2d 1272 (Pa.Super. 1979); *see also* Pa. SSJI (Civ) 4.05B.  When the "employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law."  *Fitzgerald, supra.*

According to Plaintiffs, Deslam was employed by the Diocese as a maintenance worker. (Am. Compl. ¶ 6).  He worked at Aquinas Academy, an elementary school, where D.V. attended preschool and kindergarten. (Am. Compl. ¶¶ 8, 10-11).  Importantly, Plaintiffs do not allege that Deslam was acting within the course or scope of employment when he allegedly abused D.V. Clearly, alleged abuse of a student attending Aquinas Academy is not conduct that Deslam is employed to perform and does not further any interest of either the Diocese and/or Aquinas Academy such that Deslam could, as a matter of law, be deemed to be serving the Diocese when he allegedly engaged in such conduct.  Even if any of the allegations against Deslam were true, the acts were certainly not of the kind that he would be expected to perform as part of his duties and they would not have been in furtherance of any job responsibility that could have remotely been for any legitimate Diocesan purpose.  As such, as a matter of law, Deslam could not have been acting within the scope of his employment; therefore, a negligent supervision claim premised on respondeat superior liability is not actionable against the Diocese.  For the same reason, Plaintiffs' NIED claim in Count VII is equally not cognizable against the Diocese.

In addition, the NIED claim against the Diocese and Deslam must be dismissed because it is appropriate only where a plaintiff was placed "in danger of physical impact" as a result of a

defendant's conduct and not where a physical impact actually occurred. *See* Pa. SSJI (Civ) 3.23; *Hunger v. Grand Centr. Sanitation*, 670 A.2d 172 (Pa.Super. 1996).  Notwithstanding the fact that the only averments in the Amended Complaint are against Deslam, who was not acting within the course or scope of his employment, an NIED claim is not appropriate under the circumstances where an actual physical touching or impact is alleged.  Plaintiffs claim that Deslam's actions rose to the level of, *inter alia*, sexual assault, aggravated indecent assault of a child and indecent assault, all of which require some degree of physical contact.  Thus, an NIED claim is inconsistent with these other allegations and should be dismissed.

Because Plaintiffs have not set forth any facts to establish that Deslam was acting within the course or scope of his employment when he committed the alleged bad acts toward D.V., there can be no respondeat superior liability for the Diocese and Counts III and VII must be dismissed with prejudice.    In addition, the NIED claim against Deslam must be dismissed because the elements of such a claim cannot be established and are inconsistent with the allegations against him.

c.  Plaintiffs' Premises Liability Claim is Equally Not Cognizable Against the Diocese and Count VI Must Be Dismissed With Prejudice.

Plaintiffs have also brought a "premises liability" claim against the Diocese in Count VII of the Amended Complaint.  This claim is based upon Plaintiffs' averments that the Diocese had "a duty to protect D.V. from foreseeable injury as a result of the unsafe conditions located upon its premises." (Am. Compl. ¶ 74).  Apparently, the only unsafe condition on the Diocese's premises was Deslam.  Plaintiffs' premises liability claim is not predicated on some unsafe condition of the real property of the Diocese, but rather on the alleged inappropriate conduct of Deslam, one of the Diocese's employees.   To the extent such behavior could form the basis of a

16

"premises liability" claim and to the extent this claim is not simply a reiteration of Plaintiffs' negligent supervision claim, Plaintiff has not set forth sufficient underlying factual support for such a claim.

Where an employee is acting outside the scope of his employment while on the employer's premises, the Pennsylvania Supreme Court has cited section 317 of the Restatement (Second) of Torts as the appropriate standard for liability. *Dempsey v. Walso Bureau, Inc*. 246 A.2d 418, 422 (Pa. 1968).   In such a case, the employer has a duty to use reasonable care to control the bad actor employee if the employer: (a) knows or has reason to know that he has the ability to control the employee; and (b) knows or should have known of the necessity and opportunity for using such control. *Id*.; *see also* Pa. SSJI (Civ.) 4.05C.

Restatement § 317 "sets forth the specific instances where the potential for harm is foreseeable and the ability or necessity for control of the employee exists.   That control can include the making of specific demands, or the extreme, but perhaps necessary, measure of termination from employment." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 41 (Pa.Super. 2000).   "In order for liability to be imposed under section 317, there must be some evidence that had the employer been more diligent in performing a background investigation of the employee or better supervising the employee, the tortious conduct would have been prevented." Pa. SSJI (Civ) 4.05C (Comment) (citing *R.A. v. First Church of Christ*, 748 A.2d 692 (Pa.Super. 2000)).

Here, based upon the facts (or lack thereof) alleged in the Amended Complaint, there is nothing to establish that the Diocese knew or should have known of Defendant Deslam's alleged actions toward D.V.   There is nothing averred to establish that Deslam's alleged actions or

17

D.V.'s alleged harm was foreseeable to the Diocese.  The Diocese had no reason to know that it should have taken any precaution to exercise a degree of control over Deslam.   Simply because the bad acts occurred, as alleged by Plaintiffs, does not establish employer liability, either based upon negligent supervision or "premises liability" against the Diocese.  Accordingly, Count VII must be dismissed with prejudice.

## IV.    PUNITIVE DAMAGES ARE NOT AVAILABLE FOR PLAINTIFFS' TITLE IX CLAIM.

In Count IV of the Amended Complaint, the Title IX claim, Plaintiffs allege that the Diocese "acted with evil motive or reckless indifference to Plaintiff's rights, thereby entitling Plaintiff to an award of punitive damages." (Amended Complaint ¶ 56).  To the extent the Title IX claim against the Diocese remains in the case, Plaintiffs cannot recover punitive damages under Title IX.

In *Dawn L. v. Greater Johnstown School District*, 586 F.Supp.2d 332 (W.D.Pa. 2008), the court ruled that punitive damages are not available for Title IX violations.  The court cited the United States Supreme Court's case in *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), which held that "punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act."   Because Title IX and Title VI have been consistently applied, the Supreme Court's ruling in *Barnes* applies equally to this Title IX case.  *See*, *e.g.*, *Three Rivers Center for Independent Living v. Housing*, 382 F.3d 412 (3d Cir. 2004) (quoting *Cannon v. University of Chicago*, 441 U.S. 677 (1979), which noted that Title IX "was patterned after Title VI"); *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007) (noting that Title IX remedial scheme is "almost identical to the Title VI scheme").  Therefore, punitive damages are not available to Plaintiffs for their Title IX claim and their request for punitive damages must be stricken from the Amended Complaint.

**CONCLUSION**

In accordance with the foregoing reasons, Defendants respectfully request that the Court dismiss all of the Counts of the Complaint except the IIED claim against Deslam.


Date:   September 28, 2009

/s/ Allison S. Petersen
Michael I. Levin, Esquire
Allison S. Petersen, Esquire
Amy R. Guerin, Esquire
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone: (215) 938-6378
Fax:    (215) 938-6375
*Counsel for Defendants*