IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM AND LISA VALESKY,        )
on behalf of their minor child, and   )
LISA VALESKY, an individual,         )
                                                 )
                        Plaintiffs,         )     Civil Action No. 09-0800
                                                 )
            vs.                                 )
                                                 )
THE ROMAN ARCHDIOCESE OF    )
GREENSBURG, AND NOURREDINE  )
DESLAM, an individual,                 )
                                                 )
                        Defendants.       )


AMBROSE, District Judge


**OPINION AND
ORDER OF THE COURT**

**<u>Synopsis</u>**

Plaintiffs, the parents of a minor child, assert a claim under Title IX, 20 U.S.C. § 1681 *et seq.*, and state law claims against the Roman Archdiocese of Greensburg (the "Diocese") and Nourredine Deslam ("Deslam") arising from Deslam's alleged sexual abuse of their minor child during the two years she attended the Aquinas Academy, a school operated by the Diocese. Defendants have moved to dismiss Plaintiffs' Third Amended Complaint in its entirety. Jurisdiction is premised upon 28 U.S.C. § 1331 with pendent jurisdiction over state law claims. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

1

**I.  Applicable Standards**

In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff.  Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272, at *1 (3d Cir. July 16, 2007).  In the last two years, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  After the Supreme Court's opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Fowler, 578 F.3d at 210 (quoting Iqbal, 129 S. Ct. at 1949).

"[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated. . . .Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-211 (citing Iqbal, 129 S. Ct. at 1950).  "As the Supreme Court instructed in *Iqbal,* '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1949).

## II.  Factual Allegations[1]

Plaintiffs' minor child, Jane Doe, was a student at Aquinas Academy from 2007-2009 in the school's preschool and kindergarten programs.  Defendant Deslam was a maintenance worker at the school during those years.

Plaintiffs allege that beginning when their daughter was in kindergarten, Deslam took a special interest in her.  In early September 2008, when William Valesky, Jane Doe's father, was at Aquinas Academy on lunch duty, he witnessed Deslam telling the kindergarten girls, including Jane Doe, to eat all of their food.  He observe that his daughter and the other girls were scared.  Mr. Valesky brought his concerns about the inappropriateness of Deslam's behavior to Diane Dubosky, the cafeteria monitor.  Ms. Dubosky told him that Deslam was "harmless."

The following week, when Lisa Valesky, Jane Doe's mother, was on lunch duty, she observed that Deslam had left a drill on the lunch table where the children were eating.  She shared her concern that this was unsafe with Paula Puschic, another parent.  She asked Deslam to remove his tools, and reported the incident to Ms. Dubosky, who advised her not to say anything to Deslam because he got very upset when someone said something to him.  Mrs. Valesky also noticed Deslam leaning over her daughter, touching her and her lunch.  She confronted Deslam and asked him to discontinue his behavior, informing him that he was scaring her daughter and making her cry.  In response, Deslam laughed.  Following this confrontation, Ms. Valesky shared her concerns regarding Deslam's inappropriate behavior and her daughter's discomfort with Jane Doe's teacher, Mrs. U, and Ms. Dubosky.  Mrs. U told Ms. Valesky that Deslam was "just trying

---

[1]Unless otherwise noted, the allegations described in this section are set forth in Plaintiffs' Third Amended Complaint [Docket No. 43.]

to be nice."

On September 26, 2008, Ms. Valesky filed a formal written report (the "Report") with the Diocese and the Aquinas Academy detailing Deslam's inappropriate behavior.  (A copy of the Report is annexed as Exhibit B to the Third Amended Complaint [See Docket No. 26-2]).[2] Specifically, the Report identified the following categories of behavior by Deslam: "teasing, name-calling, making critical remarks, or threatening, in person or by other means"; "demeaning and making the victim of jokes"; "making rude and/or threatening gestures"; and "intimidating (bullying), extorting, or exploiting;" and specified that Deslam was "touching [Jane Doe] and her food."  The Report also contained the following description of Deslam's conduct and its effect on Jane Doe:

> [Deslam] goes to [Jane Doe's] table every day at lunch.  He touches her and goes through her lunch box.  He tells her that she has to eat all of her food.  She is terrified of him.  She starts to cry as soon as he gets close to the table.  My husband and I have both complained to Mrs. Dubosky and she told us that he is harmless.  I have also told Mrs. [U] that he is upsetting [Jane Doe] and she said that he is just being nice.  I told [Deslam] to stay away from her because he is scaring her and he laughed at me.  I think it is inappropriate for a janitor to be touching and scaring my five year old daughter every day that she is in school.

(Id. at 2.)  Plaintiffs allege that neither Aquinas Academy or the Diocese took any action as a result of her Report.

Plaintiffs allege that Deslam sexually abused the Plaintiff beginning when she was five years old, with the first known incident occurring in October 2008.  Prior to October 2008, Jane Doe was excited and happy about going to school.  However, she began requesting that she be

---

[2]The Third Amended Complaint refers to and incorporates by reference several documents which had been attached to the Second Amended Complaint.  Although Plaintiffs failed to attach those documents when filing their Third Amended Complaint, I will deem them part of the Third Amended Complaint.

picked up earlier and earlier until she refused to go to school altogether.

Jane Doe returned to school the first week of November.  She attended for only a half day and wanted to be picked up before she had to go to the cafeteria for lunch.  She informed her parents that "school's a bad place."  On November 7, 2008, Jane Doe expressed to her parents that she did not want to go to school and refused to go to the cafeteria, because Deslam was there.  On November 13, 2008, Ms. Valesky met with Principal Rullo and Assistant Principal Dan Mahoney to discuss her concerns over Deslam, as well as her daughter's reluctance to attend school as a result of Deslam's actions.  Plaintiffs allege that once again, no action was taken.

Later in November, Ms. Valesky received a call from Ms. Dubosky, the cafeteria monitor, that Jane Doe was hyperventilating.  When Ms. Valesky arrived, Jane Doe was sitting on the lap of Wendy Leoneida with her head buried in her chest.  Jane Doe was sobbing and told Ms. Valesky that "we're not safe" and requested that her father come to keep them safe.   Principal Rullo was called and yelled at Jane Doe and told her that she was the problem.  Ms. Valesky informed Rullo that Deslam was scaring her daughter and making her uncomfortable.  During the drive home, Jane Doe continued to sob and refuse to go to school.

The following day, Jane Doe drew a picture depicting the restroom at the school, with girls in the stalls and a man, whom Jane Doe identified as Deslam.  Jane Doe informed her father that Deslam had been in the girls' restroom a few times and tells them to be quiet.  She further stated that her friends "hold their pee" because they are afraid to go to the restroom when Deslam is present.  According to Jane Doe, she and the other girls made a pact not to tell, because if they did, their moms and dads would go to jail or be killed.

Plaintiffs further allege that another parent, Mrs. Hange, also filed a complaint regarding

Deslam, and reported Deslam's behavior to Rullo on November 5th because she was concerned that a janitor was allowed to touch the children.

On November 18th, Ms. Valesky was banned from Aquinas Academy property, allegedly as a result of a complaint filed by another parent in October, over a month prior.  On November 20, 2008, Ms. Valesky met with Superintendent Trent Bocan to address the issue of sexual abuse by Deslam.

On December 8, 2008, Jane Doe underwent a psychosocial evaluation by a forensic interviewer and a licensed psychologist. [Docket No. 26-4.] Jane Doe told the interviewer that Deslam had touched the girls on the breasts, buttocks and vaginal area.  She stated that the principal and one of the kindergarten teachers previously had caught Deslam in the girl's bathroom and warned him not to go in there or yell at the girls.  She identified several other children who had been touched by Deslam in the girls' bathroom.  The interviewer concluded that "it is very possible that [Jane Doe] experienced additional incidents of sexual abuse by Mr. Deslam, which she has not yet reported" and recommended, *inter alia*, that "[a]ll of the other Kindergarten girls who were named by [Jane Doe] during today's interview should be forensically interviewed."

On March 24, 2009, a private criminal complaint was filed by Plaintiffs against Deslam. [Docket No. 26-3.]

## III.  Defendants' Motion To Dismiss

### A.      Sexual Harassment Under Title IX.

As previously explained in my opinion on the prior motion to dismiss [Docket No. 25], the Third Circuit, relying on Supreme Court precedent, has held that "damages may not be

recovered under Title IX for the sexual harassment of a student by one of the district's teachers unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  Bostic v. Smyrna School Dist., 418 F.3d 355, 360 (3d Cir. 2005) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1988)).  "Actual notice must amount to actual knowledge of discrimination in the recipient's programs."  Id.  "Further, the response must amount to deliberate indifference to discrimination" - in other words, "an official decision by the recipient not to remedy the violation."  Id.

The Third Circuit has explained actual notice of discrimination to mean "knowledge of facts sufficiently indicating substantial danger to a student such that the institution can reasonably be said to be aware of the danger."  Bostic, 418 F.3d at 361.  In Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 368 (W.D. Pa. 2008), the district court held that the school district had actual knowledge that a student was being or would be subjected to sexual harassment at the middle school, based on suggestive notes between the plaintiff and another child, the plaintiff's tearful refusal to enter to the cafeteria on multiple occasions, and the child's returning to class red-faced and crying.  In Doe v. North Allegheny Sch. Dist., 2009 WL 3166434, at *1 (W.D. Pa. Sept. 28, 2009), the court denied a motion to dismiss a Title IX claim despite "extremely tenuous" allegations of actual notice and deliberate indifference to permit development of the factual record, noting that to survive a motion to dismiss, the Third Circuit merely requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Id. at * 2 (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)).  Defendants' authority, which all involve determinations on summary

7

judgment, are not instructive at this stage of the proceedings.  See Rost v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114 (10th Cir. 2008); Hayut v. State Univ. of N.Y., 352 F.3d 733 (2d Cir. 2003); Doe v. School Admin. Dist. No. 19, 66 F. Supp.2d 57 (D. Me. 1999).

While the First Amended Complaint contained only conclusory allegations of the elements of a Title IX violation, Plaintiffs' Third Amended Complaint contains significantly more detail.  With respect to the issue of actual notice, Plaintiffs allege that they repeatedly complained to the Diane Dubosky, the cafeteria monitor, and to Jane Doe's teacher that Deslam was inappropriately touching and scaring their daughter, and filed a formal complaint with the Diocese and Aquinas Academy on September 26, 2008 with respect to Deslam's behavior. Further, Jane Doe stated in her psychosocial interview that the principal and another Kindergarten teacher had caught Deslam in the girl's bathroom and warned him against entering the bathroom and yelling at the girls.  Plaintiffs have further alleged that at least one other parent had complained about Deslam's inappropriate touching of her child.  Plaintiffs further allege that no action was taken by the school or Diocese in response to their complaints.  I find that these allegations, taken together, show more than a mere possibility of misconduct and create a reasonable expectation that discovery may reveal evidence of the necessary elements of the Title IX claim.  Accordingly, Defendants' motion to dismiss Plaintiffs' claim for violation of Title IX is denied.

**B.     Title IX Retaliation**

Plaintiff Lisa Valesky asserts a claim on her own behalf for retaliation in violation of Title IX (Count X).  Specifically, Ms. Valesky alleges that she made numerous verbal and written complaints to Aquinas Academy and the Diocese regarding Defendant Deslam's abuse and

harassment of her daughter.  (Docket No. 43, at ¶ 153.)  On November 13, 2008, Ms. Valesky demanded a meeting with Principal Rullo and Assistant Principal Daniel Mahoney, during which she again raised her concerns about Deslam.  (Id. at ¶ 149.)  Five days after this meeting, Ms. Valesky was banned from Aquinas Academy.  (Id. at ¶ 150.)  Ms. Valesky was informed that her banishment was based on a complaint of a parent filed over a month earlier.  (Id. at ¶ 151.)

In order to set forth a prima facie claim for retaliation under Title IX, a plaintiff must show that (1) she engaged in protected activity; (2) the funding recipient subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the adverse action.  See Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp.2d 332, 374 (W.D. Pa. 2008) (citing Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001)).  Ms. Valesky has alleged that she complained of sexual harassment on behalf of her daughter, and shortly thereafter, she was banished from the Aquinas Academy campus.  Accordingly, for purposes of a motion to dismiss, Ms. Valesky has stated a claim for Title IX retaliation.

## C.  Negligent Supervision

Count IV of the Third Amended Complaint sets forth a claim for negligent failure to supervise children against the Diocese. [Docket No. 43, at 14.]  Defendants seek dismissal of this claim on the grounds that the Diocese cannot be liable in *respondeat superior* where Deslam was not acting within the scope of his employment, as required by the Restatement (Second) of Agency, § 228, endorsed as Pennsylvania law in Costa v. Roxborough Memorial Hosp., 727 A.2d 490 (Pa. Super.), appeal denied, 72 A.2d 1120 (Pa. 1998).  Plaintiffs argue that Defendants misconstrue their theory of liability, which falls not under *respondeat superior*, but rather direct

9

liability under the Restatement (Second) of Torts § 317.

The Pennsylvania Superior Court in <u>Costa</u> recognized that an employer may be liable for the tortious actions of its employees:

> A master is under a duty to exercise reasonable care so as to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should have had reason to know of the necessity and opportunity for exercising such control.

708 A.2d at 495-96 (citing Restatement (Second) of Torts § 317 (1965)).  Similarly, "[a]n employer may subject himself to liability under this section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others." <u>Savokinas v. Borough of Avoca</u>, 2008 WL 2622904, at *8 (M.D. Pa. June 27, 2008) (quoting <u>Costa</u>, 708 A.2d at 496).

Plaintiffs have alleged that they informed the Diocese that Deslam was inappropriately touching their daughter and that their daughter was afraid of him.  They further allege that the principal of Aquinas Academy had caught Deslam on at least one occasion in the girls' restroom. The alleged abuse occurred on Defendants' premises.  Accepting these allegations as true for purposes of this motion to dismiss, Plaintiffs have stated a claim for negligence against the Diocese.  <u>See</u> <u>McFerron v. L.R. Costanzo Co., Inc.</u>, 2003 WL 22740938, at *5 (M.D. Pa. Sept. 10, 2003)(denying motion to dismiss negligence claim against employer based on employee's assault and battery of plaintiff).

**D.  Negligent Infliction of Emotional Distress**

Counts V and VI of the Third Amended Complaint assert claims for intentional infliction of emotional distress, respectively, on behalf of Jane Doe, derivatively, and on behalf of Lisa Valesky.  Defendants seek dismissal of the derivative claim as inconsistent as a matter of law with Plaintiffs' allegation that physical impact actually occurred and Lisa Valesky's direct claim because she was not in the zone of danger required by Pennsylvania law.

Under Pennsylvania law, a plaintiff can bring a claim for intentional infliction of emotional distress where actual physical impact has occurred.  See Bloom v. Dubois Regional Med. Ctr., 597 A.2d 671, 680 (Pa. Super. 1991) (noting that the historical requirement of physical impact to state claim for intentional infliction of emotional distress had been *expanded* to include claims by bystanders); Weaver v. Univ. of Pittsburgh Med. Ctr., 2008 WL 2942139, at *9-10 (W.D. Pa. July 30, 2008) (discussing cases where plaintiff must have sustained physical injury in order to state claim for negligent infliction of emotional distress).  Accordingly, Plaintiffs have adequately stated a claim for negligent infliction of emotional distress on behalf of Jane Doe.

However, Plaintiff Lisa Valesky's claim is insufficient as a matter of law.  Under Pennsylvania law, Lisa Valesky was not within the zone of danger permitting a claim for negligent infliction of emotional distress where she did not witness the traumatic event allegedly suffered by her daughter, but only its alleged effect on her daughter.  See Yandrich v. Radic, 433 A.2d 459, 461 (Pa. 1981) (father whose son died after being struck by an automobile did not have a claim for negligent infliction of emotional distress where the father did not witness the accident and was not in the immediate vicinity of the accident when it occurred); A.T.S. v. Boy

11

Scouts of America, 1992 WL 464252, at *3 (Pa. Com. Pl. Feb. 10, 1992) (parents whose son was allegedly sexually molested as a result of defendants' negligence did not have claim for negligent infliction of emotional distress where the parents did not observe the tortious act, only the resulting injury).  Accordingly, Count VI of the Third Amended Complaint is dismissed.

**E.      Negligence Per Se**

Plaintiffs allege claims of negligent *per se* against Deslam (Count II) and the Diocese (Count III).  "Under Pennsylvania law, the elements of a negligence *per se* action are: (1) the purpose of the statute must be, at least in part, to protect the interests of the plaintiff, individually, as opposed to the public; (2) the statute must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute; and (4) the violation of the statute must proximately cause the plaintiff injury.  Doe v. Liberatore, 478 F. Supp.2d 742, 763 (M.D. Pa. 2007).  Plaintiffs argue that Deslam's alleged violation of Pennsylvania childhood sexual abuse laws, 18 Pa. C.S.A. § 3124.1, *et seq.*, and the Diocese's violation of Pennsylvania's law requiring that suspected child abuse be reported to the proper authorities, 23 Pa. C.S. § 6311, constitute negligence *per se*.

 Under Pennsylvania law, a claim of negligence *per se* may be based on the violation of a statute that prohibits certain conduct.  See C.C.H. v. Philadelphia Phillies, Inc., 940 A.2d 336, 348 (Pa. 2008) (discussing role of statutory duty of care as basis for negligence *per se* claims); Alfred M. Lutheran Distr., Inc. v. A.P. Weilersbacher, Inc., 650 A.2d 83, 91 (Pa. Super. 1994) (while statute did not give rise to a private cause of action, it imposed a duty upon the defendant, the violation of which is negligence *per se*), appeal denied, 658 A.2d 791 (Pa. 1995).  Indeed, in Doe v. Liberatore, 478 F. Supp.2d 742, 764 (M.D. Pa. 2007), the district court, applying the four

factors set forth above, denied summary judgment on a plaintiff's claim of negligence *per se* based on evidence that the Diocese therein had reasonable cause to suspect that the plaintiff was being sexually abused, yet failed to report the potential abuse in contravention of the same child protection statute at issue herein. Similarly, applying the four factors to Plaintiffs' claim against Deslam, it is alleged that the childhood sexual abuse laws are meant to protect Jane Doe, that the statute prohibits sexual abuse of children, that Deslam engaged in such conduct, and that Jane Doe was injured as a result.

Defendants have not met their burden on this motion of demonstrating that Plaintiffs have failed to state a claim for negligence *per se*. The case law relied upon by Defendants does not address the viability of a claim of negligence *per se*, but rather, whether specific Pennsylvania statutes provide for a private right of action. See Estate of Witthoeft v. Kiskaddon, 733 A.2d 623 (Pa. 1999) (motor vehicle code did not create a private right of action for injuries to third parties based on a physician's failure to report a patient's vision disorders to the Department of Transportation); D'Errico v. DeFazio, 763 A.2d 424 (Pa. Super. 2000) (no private right of action for violation of official oppression statute), appeal denied, 782 A.2d 546 (Pa. 2001). Moreover, the court in D'Errico recognized that "violation of a criminal statute may constitute negligence per se if the plaintiff is in the class of persons the statute was intended to protect" and expressly noted that "[i]n this case. . .appellants do not seek redress under general negligence or other well-established common law principles; instead they seek to impose civil liability based on the criminal statute itself." 763 A.2d at 430.

Accordingly, I deny Defendants' motion to dismiss Counts II and III of the Amended Complaint.

### F.  Breach of Contract

In Count IX of the Third Amended Complaint, Plaintiffs allege that the Diocese breached its contractual agreement with Plaintiffs by failing to perform its obligations as set forth in Aquinas Academy's Sexual Harassment Policy and handbook.  Plaintiffs seek damages for Jane Doe's "significant emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life," reimbursement for medical and psychological treatment, and punitive damages.  Defendants have moved to dismiss the claim on the grounds that such damages are not recoverable for breach of contract under Pennsylvania law.  In response, Plaintiffs concede that damages for emotional injury are not recoverable and "instead request damages equal to the amount of tuition paid to Aquinas Academy on behalf of Jane Doe and her parents, including what Plaintiffs may have to pay to have Jane Doe attend an equally comparable academic institution in the future." (Pl. Br. at 19.)[3]

Plaintiffs have conceded that they may not recover damages for emotional injury on a breach of contract, and Defendants are correct that Plaintiffs are not entitled to punitive damages with respect to their breach of contract claim.  <u>DiGregrio v. Keystone Health Plan East</u>, 840 A.2d 361, 370 (Pa. Super. 2003).  However given that the complaint herein has been amended three times, and that Defendants have not demonstrated that Plaintiffs have not stated a valid claim for breach of contract, except with respect to the nature of the damages they sought, I will deem the allegations of Count IX amended to seek damages for breach of contract in the form of tuition reimbursement as described by Plaintiffs.  Accordingly, Defendants motion to dismiss Count IX

---

[3]Plaintiffs state that their Amended Complaint includes these damages and excludes emotional damages (Pl. Br. at 19 n.4), but I did not find any such allegations in the Third Amended Complaint.

is denied.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is granted with respect to Count VI of the Third Amended Complaint, and denied in all other respects.

**ORDER OF COURT**

Having carefully considered Defendants' motion to dismiss the Complaint [Docket Nos. 41, 42], Plaintiffs' opposition thereto [Docket No. 44], and Defendants' reply [Docket No. 45], it is hereby ORDERED that Defendants' motion to dismiss is GRANTED with respect to Count VI of the Third Amended Complaint, and DENIED in all other respects.

It is FURTHER ORDERED that counsel attend a status conference scheduled for May 17, 2010, at 10:00 a.m., before the undersigned in Courtroom 3B of the United States Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.

Dated: May 5, 2010

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge
